**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| DAVID JAMES MATTHEW, | CV 15-00038-BLG-CSO |
| Plaintiff, | |
| vs. | **ORDER** |
| BIG HORN COUNTY, SHERIFF SIMPSON, DEPUTY ATKINSON, RAYMOND JEFFERSON, JAILER DARREN, BART ELLIOT, DAVID SIBLEY, JAILER WESTON, JAILER IVAN, MICHAEL FUSS, BIG HORN VALLEY HEALTH CENTER, INC., JAYLENE PINKERTON, LPN; AND PAUL MURTER, PA.,[1] | |
| Defendants. | |

## I.    Introduction

Plaintiff David Matthew (Matthew) contends Defendants violated his federal constitutional rights while he was incarcerated in the Big Horn County Jail.  The following motions are pending:

(1)    Big Horn Valley Health Center Defendants' Motion for

---

[1]The case caption has been amended to reflect the remaining defendants in this action as indicated on page 3.

Summary Judgment (*ECF No. 64*);[2]

(2) Big Horn County Defendants' Motion for Summary Judgment (*ECF No. 70*);

(3) Matthew's Motion for Discovery (*ECF No. 75*);

(4) Matthew's Motion for Extension of Time to Complete Discovery (*ECF No. 79*);

(5) Matthew's Motion for Discovery (*ECF No. 80*).

Having considered the parties' arguments and submissions, the Court will deny Matthew's discovery motions and motion to extend discovery. The Big Horn Valley Health Center Defendants' Motion for Summary Judgment will be granted and the Big Horn County Defendants' Motion for Summary Judgment will be denied.[3]

## II. Statement of the Case

### A. Parties

Matthew was a pretrial detainee incarcerated at the Big Horn County Jail in Hardin, Montana, at the time he filed his original

_____

[2]"ECF No." refers to the document as numbered in the Court's Electronic Case Files. *See The Bluebook, A Uniform System of Citation, § 10.8.3.*

[3]Pursuant to 28 U.S.C. § 636(c), Fed.R.Civ.P. 73, and upon written consent of the parties, this matter was assigned to the undersigned on August 26, 2015. *ECF No. 23.*

Complaint. He is proceeding in forma pauperis and without counsel.

The following Big Horn County Defendants have been served and filed Answers to Matthew's Complaints and the supplements thereto: Big Horn County, Sheriff Simpson, and Deputy Atkinson (*ECF No. 12*); Raymond Jefferson, Jailer Darren, Bart Elliot, David Sibley, Jailer Weston, Jailer Ivan, and Michael Fuss (*ECF No. 61*). These Defendants will be referred to herein as "County Defendants." The following Big Horn Valley Health Center Defendants filed Answers on July 20, 2015 and January 27, 2016 (*ECF No. 14, 62*): Big Horn Valley Health Center, Inc., Jaylene Pinkerton, LPN; and Paul Murter, PA. These Defendants will be referred to herein as "BVHC Defendants."

All other defendants who may have been mentioned in the complaint and/or supplements thereto and who have not been served and have not appeared are not considered parties to this action.

### B. Matthew's Allegations

The Court grouped Matthew's allegations into the following categories: First Amendment claims, medical care claims, claims regarding conditions of confinement, equal protection claims, and a failure to protect claim.

The Court liberally construed the following First Amendment claims: denial of telephone and letter writing materials in order to communicate with the individuals outside the jail (*ECF No. 2 at 6, 9*), inability to contact attorneys (*ECF No. 2 at 8*), phone calls with attorneys are recorded (*ECF No. 2 at 8*), denial of legal materials and law books (*ECF No. 2 at 9, 10; 2-2 at 2*), and denial of religious materials (*ECF No. 2-2 at 2; 4 at 1*).

Matthew alleged the following medical care claims: denial of eye care and glasses, denial of medical and mental health medications, denial of dental care, denial of treatment for a bladder infection, denial of treatment of a crushed throat, and denial of mental health treatment. *ECF No. 2 at 4, 6, 8, 9.* He specifically alleges he was not given his medication for his mental health disorders and therefore attempted suicide. *ECF No. 4-1 at 1; 5 at 1.* He alleges he developed a bladder infection which moved to his prostate and he remained sick for two weeks with no medical attention even though he submitted a number a medical requests. *ECF No. 2 at 7, 8.* He alleges he crashed into a barbed wire fence on May 7, 2015, and the top wire crushed his throat and he was refused medical treatment. *ECF No. 2 at 8.*

Matthew also alleges that he is permanently disabled and has received no help or accommodations.  *Cmplt, ECF No. 2 at 8.*

Matthew alleged the following claims regarding his conditions of confinement claims:  poor diet and food quality (*ECF No. 2 at 6, 9; 2-2 at 2*); dirty living conditions including black mold, blood on the walls, holes in the walls, and broken bunks (*ECF No. 2 at 6, 9*); overcrowding which resulted in him having to sleep on a concrete floor (*ECF No. 2 at 6-8*); and a lack of exercise (*ECF No. 4 at 1*).

Matthew makes several allegations of racial profiling both at the jail and in the manner in which arrests are made.  *ECF No. 2 at 7, 10.* Lastly, he alleges Deputy Atkinson made it known to other inmates that Matthew had a prior conviction for a sexual offense which resulted in him being assaulted by other inmates.  *ECF No. 2 at 9, 10; 2-2 at 3.*

## III.  Matthew's Motions

Matthew filed the following three motions:  Motion for Discovery (*ECF No. 75*); Motion for Extension of Time to Complete Discovery (*ECF No. 79*); and Motion for Discovery (*ECF No. 80*).[4]

---

[4]Matthew filed several other documents which he titled as motions but which were filed as notices as they did not request any relief from

## A. Discovery Motions

By way of background, this matter was filed on May 19, 2015. *ECF No. 2.* The Court granted Matthew's motion to proceed in forma pauperis (*ECF No. 1*) and directed the Clerk to serve Defendants on June 4, 2015. *ECF No. 6.* Defendants timely answered and a scheduling order was issued on August 4, 2015. *ECF No. 17.* Pursuant to that Scheduling Order, the discovery deadline was March 11, 2016, and motions deadline was March 25, 2016. *ECF No. 17 at 2.* Matthew filed his first discovery motion on April 4, 2016 (the motion was dated March 31, 2016). As such, Matthew's discovery motions are untimely.

In addition, Defendants represent that Matthew did not propound formal discovery upon Defendants. Matthew fails to provide any evidence to the contrary. *See BVHC Defendants' Response, ECF NO. 76; Milch Affidavit, ECF No. 76-1; County Defendants' Response, ECF No. 77; Stacey Affidavit, ECF No. 77-1.* Defendants did produce an undated

---

the Court. *See e.g. M*otion to Inform Court of Temporary Transfer (*ECF No. 63*); Motion to Inform Court of Change of Address (*ECF No. 74*); *see also* Motion for Dismissal of Defendants' Motion for Summary Judgment (*ECF No. 78*) which was filed as a response to the County Defendants' Motion for Summary Judgment.

letter written by Matthew sometime after February 12, 2016, which states, "per Rule 56(c)(1) please provide all discovery, citings, and supports for your factual position" and provide "complaints/ forms/ letters" which he sent to Defendants, "medical care and treatment requests," and "all documents and records medical or otherwise...." *Matthew letter, ECF 77-1 at 7-8.*

Matthew was provided with copies of the applicable Federal Rules of Civil Procedure for requesting discovery from opposing parties. *See Sch. Ord., ECF 17 at 4 requiring Clerk to send Matthew copies of Fed.R.Civ.P. 26-37.* Yet there is no evidence that he propounded formal discovery upon Defendants within the discovery period. Even if the Court were to construe his February letter (*ECF No. 77-1 at 7-8*) as a discovery request it was untimely. The Scheduling Order clearly provides that discovery requests had to be served no later than 33 days prior to March 11, 2016. *Sch.Ord., ECF 77-1 at 2, 3.* As such, discovery had to be requested before February 6, 2015.

Matthew argues Defendants were required to provide discovery under the initial disclosure rule contained in Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure. But proceedings brought without an

attorney by a person in custody are exempt from the initial disclosure rule. Fed.R.Civ.P. 26(a)(1)(B). Defendants were under no obligation to provide Matthew discovery without formal discovery requests.

Matthew did not comply with the Court's Scheduling Order for conducting discovery and he has not provided good cause for failing to do so. As such, his discovery motions (*ECF Nos. 75, 77*) will be denied.

### B. Motion for Extension

Matthew has also filed a motion for extension of time indicating that he broke his leg on January 19, 2016, while incarcerated in the Yellowstone County Detention Facility (YCDF) and was unable to access the Court. He filed his motion for extension on April 25, 2016, seeking until November 2016 to give him time to heal and recuperate from his injuries. He also requests the appointment of counsel. *ECF No. 79.*

The Court may have been inclined to grant an extension, had the motion been filed closer to the date of Matthew's injury. But Matthew has demonstrated his ability to litigate even after his injury. He filed a Motion for No Contact Order and Order of Restraint against YCDF the day after he broke his leg. *ECF No. 58.* He has also filed a Motion to

Inform Court of Temporary Transfer (*ECF No. 63 filed March 1, 2016*); a Motion to Inform Court of Change of Address (*ECF No. 74*); a Motion for all Discovery Previously Requested from Defendants prior to March 11, 2016 (*ECF No. 75 filed April 4, 2016*); a Motion for Dismissal of Defendants' Motion for Summary Judgment (*ECF 78 filed April 25, 2016*); a Motion for Extension of Time (*ECF No. 79 filed April 25, 2016*); a Motion/Request that Court Order Defendants' to Produce Discovery and Evidence (*ECF No. 80 filed April 25, 2016*); a Response to BVHC's Motion for Summary Judgment (*Matthew Resp., ECF No. 85 filed May 9, 2016*); an Opposition to Defendants' Opposition to Produce Discovery (*ECF No. 86 filed May 13, 2016*); and two Notices of Change of Address (*ECF No. 88 filed July 18, 2016; ECF No. 89 filed August 17, 2016*). All of these documents were filed after his injury to his leg.

The motion for extension of time is untimely and Matthew failed to establish good cause for modifying the August 4, 2015 Scheduling Order and extending the time to litigate this case. The motion for extension will be denied.

Matthew also requests the appointment of counsel in his motion for extension. This is Matthew's fourth request for counsel in this case.

All prior requests have been denied.  *ECF Nos. 6, 16, 26.*  As the Court

explained in its prior Orders, a judge may only request counsel for an

indigent plaintiff under "exceptional circumstances."  28 U.S.C. §

1915(e)(1); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

"A finding of exceptional circumstances requires an evaluation of both

'the likelihood of success on the merits and the ability of the petitioner

to articulate his claims pro se in light of the complexity of the legal

issues involved.'"  *Terrell*, 935 F.2d at 1017 (citing *Wilborn v.

Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) (citations omitted).

Matthew has still not made an adequate showing of a likelihood of

success on the merits and he has demonstrated the ability to articulate

his claims pro se.  The request for counsel is denied.

## IV.  Motions for Summary Judgment

### A.  Standard

The Court shall grant summary judgment if there is no genuine

issue of material fact and the movant is entitled to judgment as a

matter of law.  Fed.R.Civ.P. 56(a).  A party seeking summary judgment

always bears the initial responsibility of informing the court of the basis

for its motion, and identifying those portions of the pleadings,

10

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue of fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

By contemporaneous notice provided on March 23, 2016, and March 25, 2016 (*ECF Nos. 68, 69*), Matthew was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998)(en banc); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## B. Health Clinic Motion for Summary Judgment

### 1. Background Facts[5]

On August 28, 2014, the County of Big Horn and the Bighorn Valley Health Center ("BVHC"), as an independent contractor, entered into an agreement for the provision of primary care services to inmates at the Big Horn County Jail.  The term of the agreement was for twenty-four (24) months, ending on September 1, 2016.  *BVHC Statement of Undisputed Facts ("SUF"), ECF No. 66 at ¶ 1 citing Health Services Agreement, 8/28/14, ECF No. 66-1.*

Matthew was booked into the Big Horn County Jail as a pretrial detainee on March 4, 2015.  *Id. at ¶ 2.*  He attempted suicide by cutting on his antecubital vein on March 9, 2015, and was seen by Paul Murter, PA, on March 10, 2015.  *Id. at ¶ 3 citing Progress Note, 3/10/15, ECF*

_____

[5]Matthew filed a response to the BVHC Defendants' Motion for Summary Judgment which addresses each of the BVHC's Defendants' Statement of Undisputed Facts.  *ECF No. 85.*  Matthew raises new claims and issues in his response but the deadline for amending pleadings has passed, therefore the Court will only consider the claims listed above in section II(B), *supra at pp. 3-5.*  In addition, the Court will only consider those events and undisputed facts which occurred prior to the filing of Matthew's supplement to his Complaint on May 28, 2015.

*No. 66-2.* After a general examination, PA Murter made the following medical assessments: (1) suicide gesture, (2) depression, and (3) methamphetamine abuse. *Id.* Based on the suicide gesture, PA Murter indicates that he did not plan on refilling Matthew's Clonazepam prescription at that time. *Id.* PA Murter also planned to "discuss case with behavioral health." *Id.*

Matthew contends that he was not seen by PA Murter on March 10, 2015, and that Murter made up the progress notes to include mental health which Murter was untrained for. *Matthew Resp., ECF No. 85 at 7.* He argues that Murter stated days later that Clonazepam was not allowed by the Sheriff so he could not refill Matthew's prescription. Matthew claims Clonazepam was instrumental in relieving his anxiety, panic, and overall well-being and the manufacturer's information for these medications states, "do not abruptly stop using this medication." *Id. at 7-8.* He claims the abrupt stoppage of the medication pushed him into a deep depression and despair which was the reason for his suicide attempt. *Id.*

According to the March 10, 2015 progress note, Matthew's current medications were reviewed and reconciled with him, and included the

following:  Trazodone HCL, an antidepressant; Methocarbamol, a muscle relaxant; Pantoprazole Sodium, a proton pump inhibitor that decreases the amount of acid produced in the stomach; and Fluoxetine HCL, another antidepressant.  *Id. at ¶ 4 citing Progress Note, 3/10/15, ECF No. 66-2 at 2-3.*

Matthew contends his medications were only reviewed after his attempted suicide and not all were reconciled.  Trazadone, Clonazepam and Oxycodone were not given because the Sheriff would not approve them.  These medications were all previously prescribed by BVHC, PA Murter and Dr. Mark.  He also alleges he was denied Triamcinolone cream for his eczema.  He claims he was denied Oxycodone for his pain and was not even given Tylenol.  *Matthew Resp., ECF No. 85 at 9-10.*

On March 13, 2015, Matthew was seen by psychiatric Nurse Practitioner Hillary Corson, APRN-BC, MSN, for mental health counseling.  *SUF, ECF No. 66 at ¶ 5 citing Progress Note, 3/10/15, ECF No. 66-3 at 2-3.*  The progress note indicates that Matthew admitted to using methamphetamine "continuously" since the fall of 2014 and that "he is coming off meth and it is affecting his mood and anxiety."  *Id.*  Nurse Practitioner Corson recommended that suicide

precautions be taken.  *Id.*  The note further reflects that Matthew was going to be transferred to the Yellowstone County Jail due to his suicidal nature and the need to have him monitored better.  *Id.*

Matthew contends that he did not admit to using methamphetamine but did complain that he had been denied his medications.  He alleges that Nurse Corson had prescribed Clonazepam but the medication was stopped by Sheriff Simpson.  *Matthew Resp., ECF No. 85 at 11.*

Matthew alleges that on March 9, 2015, Dr. Morresette recommended to the Sheriff's Department that Matthew be taken to the Billings Clinic for psychiatric help.  Matthew told Nurse Corson about this and later that day he was transported to the YCDF.  He contends that suicide, lack of medications, and his eczema were discussed at this visit but not his methamphetamine use.  *Matthew Resp., ECF No. 85 at 11-12.*

Matthew contends that he was housed at the YCDF for approximately two weeks and then transferred back to Big Horn County

Jail. *Matthew Resp., ECF No. 85 at 12.*[6]

Matthew bonded out of the Big Horn County Jail on April 29,
2015. *SUF, ECF No. 66 at ¶ 5.* He was again booked into the Big Horn
County Jail on May 8, 2015 and was evaluated on intake by Jaylene
Pinkerton, LPN. *Id. at ¶ 6 citing Intake Progress Note, 5/8/15, ECF
No. 66-4 at 2-4.* Nurse Pinkerton observed "fresh needle marks" on
Matthew's left arm. *Id.* Matthew contends that these marks were scars
from his suicide attempt and were not fresh needle marks. *Matthew
Resp., ECF No. 85 at 16.*

Defendants contend Matthew admitted to using marijuana that
day, and to taking methamphetamine intravenously the day before.
*SUF, ECF No. 66 at ¶ 5.* Matthew denies that he admitted to any drug
use. *Matthew Resp., ECF No. 85 at 16.*[7] Defendants contend that

---

[6] Based upon the record, it appears that Matthew was transferred
to the YCDF sometime soon after his March 13, 2015 visit with Nurse
Corson and was returned to Big Horn County Jail on or about April 3,
2015. *See Matthew Resp., ECF No. 85 at 12; Dr. Mark Opinion Ltr.,
ECF No. 65-1 at 3, ¶ 3.*

[7] While Matthew denies that he discussed his drug use, he
attached a May 10, 2015 medical request form to the supplement to his
complaint wherein he stated, "I need help with my addition to meth."
*ECF No. 4-1 at 5.*

Matthew did not appear to be having withdrawal symptoms, as he was still under the influence of marijuana and methamphetamine. *SUF, ECF No. 66 at ¶ 5.* Matthew indicated that he had no current suicidal thoughts. *Matthew Resp., ECF No. 85 at 16.*

The May 8, 2015 intake progress note describes Matthew's current medications as including the following: Pantoprazole Sodium, a stomach acid reducer; Gabapentin, an anticonvulsant; Naproxen, an anti-inflammatory (NSAID); Triamcinolone Acetonide, a corticosteroid cream; and Mirtazapine, an antidepressant. *SUF, ECF No. 66 at ¶ 7 citing Intake Progress Note, 5/8/15, ECF No. 66-4 at 3.* Matthew contends that this is not a complete list of his medications. *Matthew Resp., ECF No. 85 at 17.*

On May 14, 2015, Matthew was again seen at the Big Horn County Jail by PA Murter based upon his complaints of throat and ankle pain. *SUF, ECF No. 66 at ¶ 8 citing Progress Note, 5/14/15, ECF No. 66-5 at 2-3.* According to the note, Matthew stated that he had run into a wire while riding his motorcycle, and was complaining of anterior neck pain and left ankle pain. *Id.* Matthew contends that this progress note proves deliberate indifference because he told staff about

his throat injury on May 8, 2015, and it was not treated until May 14, 2015. *Matthew Resp., ECF No. 85 at 18.*

At the May 14, 2015 visit, PA Murter conducted a physical examination of Matthew. He found his neck to be supple with a full range of motion and no evidence of ecchymosis. He did observe some bruising on the ankle, but noted that the ankle bears weight well. *SUF, ECF 66 at ¶ 9 citing* Progress Note, 5/14/15, ECF No. 66-5 at 2-3. PA Murter ordered follow-up x-rays of Matthew's neck and ankle. *Id.* He also ordered refills on a number of Matthew's medications, including the antidepressant Mirtazapine. *Id.*

Matthew disagrees with Murter's assessment of his neck and contends that he had prior neck injuries that left his neck with less than full range of motion. He states his neck was firm to the touch, and hard in the anterior and did not have full range of motion. *Matthew Resp., ECF No. 85 at 18.*

During the morning of May 22, 2015, Nurse Pinkerton was informed by the Big Horn County Jail that Matthew was found in possession of a 2-3' rope, which was fashioned out of a shredded sheet. *SUF, ECF No. 66 at ¶ 10 citing Telephone Encounter, 5/22/15, ECF*

*No. 66-6 at 2.*  She was also informed that Matthew was observed on camera to be crushing medications which he had hoarded, and using makeshift paraphernalia to "snort" the substance.  *Id.*  Nurse Pinkerton viewed the video along with Sheriff Simpson and Undersheriff Elliot, and they all concluded that he was misusing his medications.  *Id.*

Matthew contends that this statement is unfounded, irrelevant, and no evidence was provided to support the statement.  He contends that he was not written up for a rule violation based upon this incident.  *Matthew Resp., ECF No. 85 at 18-19.*  He denies misusing his medications.  *Matthew Resp., ECF No. 85 at 21.*  He contends that he could not have been hoarding his medications because LPN Pinkerton and a jailor would watch him take his medications every time they were passed out and they checked his mouth after watching him swallow his medications.  *Matthew Resp., ECF No. 85 at 21-22.*

Per protocol and a Standing Order issued by the Big Horn County Sheriff's Office, and because he was caught misusing and hoarding his medications, Matthew began receiving his medications crushed and placed in liquid.  *SUF, ECF No. 66 at ¶ 11 citing Standing Order, (Revised) 9/15/14, ECF No. 66-7 at 2.*  Matthew argues the standing

order is fake.  *Matthew Resp., ECF No. 85 at 20-21*.

While he was originally compliant in taking his medications in crushed form and placed in liquid, Matthew refused, on May 26, 2015, to take his medications if they were in that form. *SUF, ECF No. 66 at ¶ 13 citing Telephone Encounter, 5/26/15, ECF No. 66-8 at 2.*

Matthew states he had an ulcer type open sore, at the end of his esophagus and the opening of his stomach, called a hiatal hernia.  He contends that when he swallowed the crushed medication, it caused a horrible burning pain.  After a couple days of taking the medication and throwing it back up, he developed a constant pain and ache in his upper stomach area.  *Matthew Resp., ECF No. 85 at 20-21*.  He states he was unable to tolerate the pain from taking his medications dissolved in water any longer.  *Matthew Resp., ECF No. 85 at 21-22*.

On June 5, 2015, Matthew he was discharged from the Big Horn County Jail.  *SUF at ¶ 13*.  He filed his original complaint in this Court on May 19, 2016 and a supplement to the Complaint on May 28, 2016. *ECF Nos. 2, 4*.  He filed a second supplement on December 8, 2015, adding new defendants but not amending his claims.  *ECF No. 39*.

## 2. Parties' Arguments

In his Complaint, Matthew specifically alleged that Big Horn Valley Clinic and Defendant Murter were deliberately indifferent to his injuries and medical conditions. He alleged that Dr. Murter discontinued medications that had been prescribed to him. *Cmplt, ECF No. 2 at 6.* He alleged a lack of adequate medical treatment, mostly mental health, and that he suffered from a severe urinary tract infection from March 4, 2015 to May 2015. *Cmplt., ECF No. 2 at 8.* He alleged that he was given little to no medications. He alleged that he was denied medical care for his throat after he crashed into a barbed wire fence. He contended that he is permanently disabled both mentally and physically yet was given no help or accommodations. *Id.* He alleged that Defendant Murter denied him adequate medical care and medications necessary to treat conditions diagnosed by himself and other doctors including but not limited to mental health conditions. *Id. at 9-10.* In a letter to the Clerk dated May 27, 2015, Matthew alleged that the medications prescribed to keep him from committing suicide due to his bipolar disorder and/or depression had been discontinued. *Letter, ECF No. 5 at 1.* Matthew also alleges a denial of eye care,

glasses, and dental care but he does not attribute those denials to the BVHC Defendants.

The BVHC Defendants argue they were not responsible for the provision of optometry or dental care, and that Matthew received constitutionally adequate care for his alleged bladder/prostate infection, he received constitutionally adequate mental health care, he received constitutionally adequate care for his crushed throat, and the risks associated with "snorting" his medications far outweighed the risks associated with discontinuing Matthew's medications for a brief period of time. *ECF No. 65 at 24-31.*

### 3. Applicable Law

When an individual has "not been convicted of a crime, but ha[s] only been arrested, his rights derive from the due process clause rather than the Eighth Amendment's protection." *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (*citing Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). The Ninth Circuit has nonetheless held that, "[w]ith regard to medical needs, the due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes: 'persons in custody ha[ve] the established right to not have officials remain deliberately

indifferent to their serious medical needs.' " *Id.* (*quoting Carnell v. Grimm*, 74 F.3d 997, 979 (9th Cir.1996)) (second alteration in original); *see also Carnell*, 74 F.3d at 979 ("[T]he due process rights are at least as great as the Eighth Amendment protections available to a convicted prisoner.") (emphasis added).

The Supreme Court has also indicated: "Since it may suffice for Eighth Amendment liability that prison officials were deliberately indifferent to the medical needs of their prisoners, it follows that such deliberately indifferent conduct must also be enough to satisfy the fault requirement for due process claims based on the medical needs of someone jailed while awaiting trial." *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998).[8]

---

[8]A recent Supreme Court decision calls into question whether it is appropriate to borrow the Eighth Amendment standard when the claim is brought by an arrestee, not a convicted prisoner, and whether the Due Process Clause may afford greater protection than the Eighth Amendment. *See Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2475 (2015) ("The language of the two Clauses differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all...."). The Court need not resolve this issue, however, because it appears there would be little practical difference between whether a pretrial detainee's medical needs claim is examined under a test akin to that in *Kingsley* or the deliberate indifference standard from the Eighth Amendment.

The Eighth Amendment of the United States Constitution entitles inmates to medical care, but it is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F .3d 1113, 1122 (9th Cir. 2012); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a denial of medical care claim, an inmate must allege: "(1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." *Wilhelm*, 680 F.3d at 1122 (*citing Jett*, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 (*citing Jett*, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. *Snow*, 681 F.3d at 985 (citation and quotation marks omitted); *Wilhelm*, 680 F.3d at 1122.

### 4. Analysis

From the record, it appears Matthew was held at the jail from March 4, 2015 until approximately March 14, 2015; from approximately April 3, 2015 to April 29, 2015; and from May 8, 2015 until June 5, 2015 -- a total of approximately 67 days. During that time, he was prescribed a number of medications for a variety of ailments; he was evaluated by BVHC Defendants on at least six occasions; he was given a ten-day round of antibiotics; and he had x-rays on his neck and ankle. In general, there is no evidence to suggest that these Defendants were deliberately indifferent to Matthew's medical needs. The Court will, however, examine the specifics of Matthew's claims.

### a. Optometry and Dental Care

Matthew alleges that he was denied optical and/or dental care, but nowhere in the Complaint does he attribute that alleged denial to the BVHC Defendants. *Cmplt., ECF No. 2.* In addition, the BVHC Defendants have presented undisputed evidence that the Health Services Agreement between BVHC and Big Horn County does not include the provision of optometry or dental care. *SUF, ECF No. 66 at ¶ 1.* Matthew does not dispute the BVHC Defendants' evidence and

argument that they were not responsible for optical or dental care at the jail.

The BVHC Defendants are entitled to summary judgment on these claims. *See, e.g.. Hooks v. Bannister*, 2015 WL 4488145, at *8 (D.Nev. 2015) (summary judgment granted to jail physician on inmate's § 1983 claims where physician was "not responsible for Plaintiffs dental care").

### b. Bladder Infection

Matthew alleged "he developed a bladder infection which moved to his prostate and he remained sick for two weeks with no medical attention even though he submitted a number of medical requests." *Cmplt., ECF No. 2 at 7, 8.*

According to Dr. David Mark, the Chief Executive Officer for Big Horn Valley Health Center and one of Matthew's health care providers, Matthew first mentioned the possibility of a possible urinary tract infection in an April 10, 2015 medical request in which he complained that there had been "no follow up to see MD for bladder/prostate infection." Prior to this request, Matthew had not mentioned any urinary or prostate symptoms. Matthew was scheduled to see the

provider on April 14, 2015 but he refused to let the provider conduct a clinical exam of the prostate. Lab testing revealed a normal PSA test suggesting that there was no infection in the prostate. Given that this blood test required several days for results (it was reviewed by the provider on 4/19/15), Matthew was treated empirically with a ten-day course of appropriate antibiotic to treat both a bladder and/or prostate infection. Matthew refused to supply a urine specimen on 4/14/15 (as ordered by the provider) which would have helped confirm or deny the presence of an active bladder infection. *Dr. Mark Opinion Ltr., ECF No. 65-1 at 1.*

In his response Matthew argues that he developed a urinary tract infection while he was incarcerated at the YCDF, presumably sometime between March 14, 2015 and April 3, 2015. The infection went untreated at the YCDF and traveled to Matthew's bladder and then to his prostate. *ECF No. 85 at 4-6.* But Matthew's response only describes events which took place at the YCDF for which the BVHC Defendants were not responsible. Matthew's convoluted theory that the BVHC Defendants are nevertheless responsible because they conspired to have him transferred to YCDF is irrelevant. Whatever treatment Matthew

received at YCDF cannot be attributed to the BVHC Defendants.

Regardless of how Matthew acquired the alleged infection, Defendants have presented uncontradicted evidence that as soon as he complained about the infection at the Big Horn County Jail, he was seen, a lab test was done, and he was provided a 10-day course of antibiotics even though he refused to give a urine sample. Such treatment clearly does not rise to the level of deliberate indifference to a serious medical need. Summary judgment will be granted to the BVHC Defendants on this claim.

### c. Mental Health Care

Matthew alleged that he was not given his medication for his mental health disorders and therefore attempted suicide. *ECF 4-1 at 1; ECF No. 5 at 1.* Matthew was first booked into the jail on March 4, 2015. He attempted suicide on or about March 9, 2015. He was seen by PA Murter, and Murter consulted with the psychiatry team at the Billings Clinic for input on managing Matthew's behavioral health issues. *ECF No. 66-2 at 2-3.* On March 13, 2015, Matthew was evaluated by Nurse Corson who adjusted his psychiatric medications. *ECF 66-3 at 2-3.* He was then transferred to the YCDF for closer

monitoring relative to his mental health issues.

Upon his return to the Big Horn County Jail on or about April 3, 2015, Matthew submitted a medical request voicing his desire to have a follow-up with his psychiatric nurse practitioner. He was informed that his appointment would be scheduled when Nurse Corson returned from leave. In the interim, he cancelled an appointment with PA Murter which was scheduled for him in early April. He eventually saw PA Murter on April 14, 2015, at which time his mental health concerns were addressed. Matthew had a visit with Nurse Corson on April 17, 2015. On April 27, 2015, Nurse Corson further adjusted Matthew's psychiatric medication regimen. *Dr. Mark Opinion Ltr., ECF No. 65-1.*

Upon his re-arrest, on May 8, 2015, Matthew had another intake evaluation. Nurse Pinkerton assessed his mental health status and he denied thoughts of suicide or self-harm. Given his active use of marijuana and methamphetamine, he was treated by PA Murter with a psychoactive medication to mitigate the withdrawal symptoms, according to established clinical protocol. *Id.*

Matthew submitted a medical request form for mental health treatment on May 10, 2015. *ECF 4-1 at 5.* He was evaluated by PA

Murter on May 14, 2015, and restarted on his psychiatric medication regimen. On May 22, 2015, he was noted to be displaying behaviors consistent with ideas of self-harm and interventions were taken by jail staff to ensure his safety.

Contrary to Matthew's allegations, the evidence reveals that Defendants were attentive and responsive to Matthew's mental health concerns. While some medications may have been discontinued while he was incarcerated, he was prescribed other anti-depressants and other medications for his medical conditions. For example, Matthew complains that he was not given Clonazepam which was instrumental in relieving his anxiety, panic and overall well-being. *Matthew Resp., ECF No. 85 at 7.* But he was prescribed fluoxetine, trazadone, and hydroxyzine by Nurse Corson on March 13, 2015. *ECF No. 66-3 at 2.*

At most, Matthew has argued that there was a disagreement between himself and the medical providers regarding what medications he should have been prescribed. However, "[a] difference of opinion between a physician and the prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference." *Snow*, 681 F.3d at 987 (*citing*

*Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), *overruled in part on other grounds, Peralta*, 744 F.3d at 1082–83.  Rather, Matthew "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (*citing Jackson*, 90 F.3d at 332) (internal quotation marks omitted).  He has not met this burden.  His disagreements regarding what may or may not have been discussed at various appointments (*see e.g. ECF No. 85 at 12*), is not material to the determination of whether Defendants were deliberately indifferent to Matthew's mental health needs.  Matthew may not have agreed with the medical decisions made by Defendants but he has not established a genuine issue of material fact as to whether Defendants were deliberately indifferent to his mental health concerns.  Summary judgment will be granted on this claim as to the BVHC Defendants.

### d. "Crushed Throat"

Matthew alleged "he crashed into a barbed wire fence on May 7, 2015, and the top wire crushed his throat and he was refused medical treatment." *Cmplt., ECF No. 2 at 8*.  As noted above, Matthew was

evaluated upon intake in the jail on May 8, 2015. Defendants contend that he made no mention of any throat pain or injury to his neck. He argues that he told Nurse Pinkerton about the wire hitting him across the throat but she stated that it did not look as bad as Matthew was making it sound. He states that there was swelling in his throat and a red line across the front of his neck at this time. *Matthew Resp., ECF No. 85 at 16-17.*

Defendants admit that Matthew complained of discomfort in his neck on May 12, 2015, and he was evaluated by PA Murter on May 14, 2015. PA Murter found no signs or symptoms of an injury to the throat or neck. Nevertheless, cervical spinal x-rays were ordered and performed at Big Horn Hospital on May 15, 2015. The x-rays revealed no damage to bones or soft tissues consistent with an acute injury. *Dr. Mark Opinion Ltr., ECF No. 65-1 at 1.* Matthew disagrees with PA Murter's assessment of his neck. *Matthew Resp., ECF No. 85 at 18.*

At most, Matthew has alleged a six-day delay in the treatment of a neck injury. "Mere delay of [medical treatment], without more, is insufficient to state a claim of deliberate medical indifference . . . unless the denial was harmful." *Shapley v. Nevada Bd. of State Prison*

*Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  The x-rays of Matthew's neck taken on May 15, 2016, revealed no damage to bones or soft tissues consistent with an acute injury.  *Dr. Mark Opinion Ltr., ECF No. 65-1 at 1*.  As such, Matthew has failed to demonstrate that the delay was harmful.  There are insufficient facts to demonstrate a genuine issue whether Defendants were deliberately indifferent to Matthew's neck injury.

### e.  Discontinuation of Medications

Matthew alleged in his original complaint that PA Murter discontinued medications for no reason.  *Cmplt., ECF No. 85 at 6.*  Presumably, Matthew is referring to the discontinuation of Clonzepam which was discussed above.  As set forth above, Matthew was prescribed other anti-depressants other than Clonzepam and his difference of opinion with his medical providers is insufficient to state a claim for deliberate indifference.

Attached to a document filed as a supplement to the Complaint (*ECF No. 4*), Matthew attached a letter addressed to the Director of the Big Horn Valley Clinic in which he discusses the discontinuation of his medications between May 26, 2015, and June 5, 2016, when he was

discharged from the jail. *ECF No. 4-1 at 1-4.* The BVHC Defendants explain this situation as follows:

> On May 22, 2015, the plaintiff Matthew was observed at the Big Horn County Jail to be crushing medications which he had hoarded, and using makeshift paraphernalia to "snort" the substance. *SUF, ¶ 10.* Nurse Pinkerton viewed a video depicting this action along with Sheriff Simpson and Undersheriff Elliot, and all concluded that Matthew was misusing his medications. *Id.*
>
> Per protocol and a Standing Order issued by the Big Horn County Sheriff's office, and because he was caught misusing and hoarding his medications, the plaintiff Matthew began receiving his medications crushed and placed in liquid. *SUF, ¶ 11.*
>
> While he was originally compliant in taking his medications in crushed form and placed in liquid, on May 26, 2015, the plaintiff Matthew elected to refuse to take his medications if they were administered in that form. *SUF, ¶ 13.* On June 5, 2015, the plaintiff was discharged from the Big Horn County Jail. *Id.*

*BVHC MSJ Brf, ECF No. 65 at 29.* Matthew contends that he was not misusing his medications and that crushing the medications and forcing him to take them in liquid form was causing him significant pain. He claims he made Defendants aware that this method of giving medications was causing him pain. *ECF No. 85 at 19-20.*

Nurse Pinkerton was advised that Matthew was attempting to

34

snort his medications. This was observed on video and seen by at least three other jail officials. *May 22, 2015 telephone encounter note, ECF No. 66-6 at 2.* In support of their motion for summary judgment, Defendants presented the opinion of Dr. Mark who indicated that crushing medications and snorting them is unsafe and places individuals at risk of serious, life-threatening side effects. *Dr. Mark Opinion Ltr., ECF No. 65-1 at 2-3.* Therefore, Matthew's medications were crushed and placed in liquid. Matthew took his medications in this form until May 26, 2015, when he refused them. He was not provided his medications for ten-days until June 5, 2015, when he was discharged from the jail.

While Matthew disputes that he was attempting to snort his medications, jail officials and Nurse Pinkerton believed that is what he was doing based upon a video. Matthew's medications were not discontinued at this point, they were simply crushed and placed into a liquid. Matthew took this form for approximately five days and then he refused his medications. It appears based upon this evidence that Defendant Pinkerton was attempting to protect Matthew and provide him with his medication. Although it may have been uncomfortable for

35

a period of time, Defendants were providing him with his medication. There is no evidence that Defendants were disregarding an excessive risk to Matthew's health or safety (*See Farmer v. Brennan*, 511 U.S. 825, 834 (1994)), but rather their actions were done to protect Matthew from himself. There is no evidence on which the Court could find that Defendants were deliberately indifferent to Matthew's serious medical needs. Summary judgment will be granted on this claim as to the BVHC Defendants.

### C. County Defendants Motion for Summary Judgment

The County Defendants (County) argue that Matthew's claim fails as a matter of law because he failed to provide expert testimony to support his claims. *ECF No. 70.* The County fails to point to any authority holding that federal courts require expert evidence in every Eighth Amendment claim alleging deliberate indifference, or that the absence of such testimony mandates a grant of summary judgment. The Court is not aware of any such authority.

Rule 702 of the Federal Rules of Evidence provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a

witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Under this standard, expert testimony is not generally required to prove deliberate indifference. *Sanders v. York*, 446 Fed.Appx. 40, 43 (9th Cir. 2011); *Seals v. Mitchell*, No. CV 04–3764 NJV, 2011 WL 1399245 (N.D.Cal. Apr.13, 2011) ("Plaintiff is correct that he is not required to present a medical expert to establish his § 1983 excessive force case.").

Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal citation omitted). "Because the deliberate indifference analysis is subjective, expert testimony is neither necessary nor significantly useful in determining whether Defendant acted with deliberate indifference. Expert testimony would not be admissible on the question of Defendant's state of mind." *Johnson v. Cate*, 2015 WL 5321784 (E.D.Cal. Sept. 10, 2015).

In cases involving complex medical issues where a plaintiff contests the type of treatment he received, expert opinion may be

necessary to establish the necessary level of deliberate indifference. *Hutchinson v. United States*, 838 F.2d 390 (9th Cir. 1988). But this is not such a case. Matthew's claims are not complex or technical. He alleges he was denied access to a telephone and legal materials. He contends he was held in unsanitary conditions of confinement. He states he was made to sleep on a concrete floor and was not provided adequate exercise. He alleges he was not provided eye glasses or dental care. He also raises some medical care claims (many of which have been addressed herein) but none of these issues are particularly complex or technical. A trier-of-fact does not require a medical expert to determine whether Defendants were deliberately indifferent to a plaintiff's medical needs. *See Ledford v. Sullivan*, 105 F.3d 354, 359 (7th Cir. 1997) (recognizing that deliberate indifference claims are based upon a subjective state of mind, and thus do normally not require the kind of objective, expert testimony required in a malpractice action).

The Court finds that Matthew's allegations are not so complicated as to require the testimony of an expert witness. The County Defendants' Motion for Summary Judgment will be denied.

Based upon the foregoing, the Court issues the following:

## ORDER

1.  Big Horn Valley Health Clinic Motion for Summary Judgment (*ECF No. 64*) is **GRANTED**.  Defendant Big Horn Valley Health Center, Inc., Jaylene Pinkerton, LPN; and Paul Murter, PA are **DISMISSED**.

2.  Big Horn County Defendants' Motion for Summary Judgment (*ECF No. 70*) is **DENIED**.

3.  Matthew's Motion for Discovery (*ECF No. 75*) is **DENIED**.

4.  Matthew's Motion for Extension of Time to Complete Discovery and request for counsel contained therein (*ECF No. 79*) are **DENIED**.

5.  Matthew's Motion for Discovery (*ECF No. 80*) is **DENIED**.

An Order scheduling further proceedings will be issued by the Court promptly.

DATED this 28th day of September, 2016.

*/s/ Carolyn S. Ostby*
United States Magistrate Judge